Roderick LA MONTAGNE,
Plaintiff-Appellant,

v.

AMERICAN CONVENIENCE PROD-
UCTS, INC., Defendant-Appellee.

No. 83–2493.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1984.
Decided Dec. 27, 1984.

Arthur J. Harrington, Charne, Glassner, Tehan, Clancy & Taitelman, Milwaukee, Wis., for plaintiff-appellant.

Clifford B. Buelow, Davis, Kuelthau, Vergeront, Stover, Werner & Goodland, S.C., Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

Plaintiff Roderick La Montagne brought this action against his former employer, American Convenience Products, Inc. (the "Company"), seeking damages for age discrimination in connection with the termination of his employment allegedly in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) ("ADEA"). La Montagne won a jury verdict at trial, but the district court granted the Company's motion for judgment notwithstanding the verdict. The only issue on appeal is whether the district court properly entered judgment n.o.v. We affirm.

**I**

Roderick La Montagne served as vice president of marketing and sales for the Company from the date of its formation in 1974 until June 20, 1980, when he was discharged. He has an MBA from Stanford. At the time of his discharge he was 51 years old.

The Company manufactured paper products for the food service industry. Besides La Montagne there were three other officers, all in their fifties: George A. Bark (president), Fred W. Martin (senior vice president), and F. Joseph David (secretary-treasurer). They owned 75% of the Company's stock and were the only directors.

During La Montagne's tenure as vice president of marketing and sales the Company's annual sales grew from $9 million to $20 million, and La Montagne received regular salary increases and increasing bonuses. His personnel file contained no adverse evaluations, indeed, no evaluations of any kind. He was never warned that his job was in jeopardy.

La Montagne's relations with Bark (the president) were strained. In 1978 Albert Pirhofer, whom La Montagne had recently fired from his post as customer service manager, told Bark that La Montagne had spoken insultingly of Bark and had kept information from him. Bark believed that La Montagne did not respect him and complained that La Montagne did not respect him and complained that La Montagne did

not communicate with him and was creating divisiveness in the sales and marketing department.

At a meeting of the board of directors in December 1979 Bark told Martin and David that he was "fed up" with the lack of communication and divisiveness and wanted to keep La Montagne's bonus at last year's level. Martin and David prevailed on him to increase it. Bark said that he intended to terminate La Montagne.

In 1979 the Company acquired a foam-producing operation, which became the Foamware Division, also under the general marketing supervision of La Montagne. Bark talked to Norman Zweibel, the division's manager, about the hiring of a production manager. On February 20, 1980, Zweibel wrote to Bark, saying:

> After analyzing our requirements, availability and cost of people etc., I have now come to the conclusion that our best bet may be to hire a bright young individual with some supervisory experience, mechanical aptitude and/or background, and a lot of ambition and intelligence— one who learns fast and well—and teach him to do the job we want done.

Bark did not recall answering this letter.

The Foamware Division was troubled from the start. Sales were slow during 1979. La Montagne put into effect a program to increase sales. The program worked, but the division nevertheless continued to operate at a loss. Bark was upset and called a meeting for March 6, 1980, of the Company's officers, Zweibel, and certain staff people. At the meeting Bark asked La Montagne for his proposals. La Montagne said that he did not pretend to have a solution and suggested bringing in an expert consultant. Bark was angered by this response and dismissed the meeting. The next day David returned to First Wisconsin National Bank a lender's inquiry form concerning La Montagne on which David wrote that La Montagne's prospects for continued employment were "good."

At the next quarterly meeting in April, Bark was dissatisfied with the report of sales and marketing. At that point he de-

cided to discharge La Montagne and informed Martin and David. He decided, however, to wait until after the National Restaurant Association show in the last part of May.

Bark picked William Sutton, age 47, the Company's western regional sales manager, to replace La Montagne. Martin and David approved. Martin was concerned that Sutton, who lived in California, might not want to relocate in Milwaukee. On June 16, 1980, Bark went to the west coast to offer Sutton the job. He offered Sutton a $10,000 raise and improved fringe benefits. Sutton was pleased but asked for time to consider.

On June 20, 1980, Bark called La Montagne into his office and discharged him. La Montagne left the Company premises immediately and spent the rest of the day on the telephone to his associates at the Company and to persons who might help him in the search for a new job. Late in the evening he reached Fred Martin. Angry and agitated, he told Martin what had happened. According to La Montagne, Martin said that he had told Bark that Bark should not discharge La Montagne until he had a younger man to replace him. Martin denies making this statement.

On June 25 Sutton declined Bark's offer of La Montagne's job. The next day, after consulting with Martin and David, Bark offered to Gregory P. Ibsen the job of manager of marketing and sales—La Montagne's job without the status and responsibilities of an officer of the Company. Ibsen had been with the Company and its predecessor since 1973 and in 1980, at age 34, held the post of products manager. Bark offered him a $10,000 raise, and Ibsen accepted.

On February 5, 1981, La Montagne filed a charge of discrimination with the Equal Rights Division of the Wisconsin Department of Industry, Labor, and Human Relations and with the Equal Employment Opportunity Commission. He also filed with the Commission a notice to file a civil action.

On May 21, 1981, La Montagne commenced this action in the district court, alleging violation of the ADEA. The case was tried to a jury in the district court. The jury rendered a verdict for La Montagne. The Company moved for judgment notwithstanding the verdict, and the court granted the motion. La Montagne filed a timely notice of appeal.

## II

■ The ultimate burden on a plaintiff in an age discrimination case is to prove that he was discharged because of his age. *Golomb v. Prudential Insurance Co. of America,* 688 F.2d 547, 550 (7th Cir.1982); 29 U.S.C. § 623(a). To accomplish this, he must prove not that age was the sole factor motivating the employer to discharge him but that age was a "determining factor," in the sense that he would not have been discharged "but for" his employer's motive. to discriminate against him because of his age. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979). The plaintiff may try to meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge. *See Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 239 (4th Cir.1982); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 920–21 (2d Cir.1981); *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1113 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981).

■ By far the more common method of proof, however, is that set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] This indirect proof, as elaborated and clarified in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), requires the plaintiff first to prove a prima facie case of discrimination, by showing (1) that he was in the protected class, (2) that he was doing his job well enough to meet his employer's legitimate expectations,[2] (3) that in spite of his performance he was discharged, and (4) that the employer sought a replacement for him. *Huhn v. Koehring,* 718 F.2d 239, 243 (7th Cir.1983); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 (1st Cir.1979). Success gives rise to a rebuttable presumption of discrimination, and the burden then falls on the defendant to articulate lawful reasons for the discharge. The defendant's burden is only one of production; the burden of persuasion rests at all times on the plaintiff. If the defendant articulates lawful reasons, the presumption is dissolved, and the burden falls on the plaintiff to prove that the proffered reasons are a pretext, by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *See Burdine,* 450 U.S. at 253–56, 101 S.Ct. at 1093–95.

The special virtue of the indirect method of proof is that it allows victims of age discrimination to prevail without presenting

---

1. *McDonnell Douglas* was a racial discrimination case brought under Title VII of the Civil Rights Act of 1964. There is nevertheless general agreement among the circuits that the framework of proof introduced in *McDonnell Douglas* is applicable as well to age discrimination cases under the ADEA. *See Golomb v. Prudential Insurance Co. of America,* 688 F.2d 547, 551 (7th Cir.1982); *Reeves v. General Foods Corp.,* 682 F.2d 515, 520 (5th Cir.1982); *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 238–39 (4th Cir.1982); *Douglas v. Anderson,* 656 F.2d 528, 531 (9th Cir.1981); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919–20 (2d Cir.1981); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1014–17 (1st Cir. 1979).

2. As the test was originally formulated in *McDonnell Douglas,* the second factor was that the plaintiff was qualified for the job. This is more appropriate to a case of discriminatory hiring, as *McDonnell Douglas* was, than to discriminatory discharge. When an employee of long standing is discharged, the more appropriate concern would appear to be his job performance, into which the question of his qualifications might be seen to merge. Thus we follow *Loeb v. Textron, Inc.* in making this modification to the original test. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1219 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). It is clear that the *McDonnell Douglas* test is flexible and may be adapted to the fact situation as appropriate. *See McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

*any* evidence that age was a determining factor in the employer's motivation. Age discrimination may be subtle and even unconscious. *See Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 154–55 (7th Cir.1981). Even an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one. When evidence is in existence, it is likely to be under the control of the employer, and the plaintiff may not succeed in turning it up. The indirect method compensates for these evidentiary difficulties by permitting the plaintiff to prove his case by eliminating all lawful motivations, instead of proving directly an unlawful motivation.[3]

La Montagne contends that he intended to employ both the direct and the indirect methods of proof, and indeed the jury instructions he proposed to the district court included instructions on both methods. The court's actual instruction did not clearly separate the two methods, but La Montagne can hardly complain of error, because the verdict was in his favor. In our review we shall consider the state of the evidence under both methods of proof.

■ A district court's grant of judgment n.o.v. is subject to de novo review; we apply the same standard as the district court. *Syvock,* 665 F.2d at 153. The standard is whether there is substantial evidence to support the verdict. More particularly, we inquire whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict. *Id.* Any conflicts in the evidence must be resolved in favor of the party winning the verdict, and every permissible inference favoring that party must be drawn. *Id.* We do not judge the credibility of witnesses, *see Freeman v. Franzen,* 695 F.2d 485, 489 (7th Cir.1982), *cert. denied,* — U.S. —, 103

S.Ct. 3553, 77 L.Ed.2d 1400 (1983), and we do not reweigh the evidence as a jury would, attempting to find a preponderance on one side or the other. We do, however, weigh the evidence to the extent of determining whether the evidence to support the verdict is *substantial;* a mere scintilla of evidence will not suffice. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969).

### III

La Montagne contends that the real motivation for his discharge was a desire to cut costs by replacing a highly compensated experienced employee with an inexperienced younger person who could be paid less. The savings would result both from the lower salary and bonuses that would be paid to the replacement over the years, as compared to what La Montagne would likely have been paid, and from the avoidance of pension liability to La Montagne by terminating him a few months before his benefits under the company pension plan were due to vest. According to La Montagne's theory, Bark, Martin, and David had decided to replace him with the 34-year-old Ibsen before he was discharged. In order to conceal their true motivation, they decided to offer the job to the older, more experienced Sutton first, knowing that he would decline. They would then appear to settle for Ibsen as second best. Because the salary and benefits offered to Sutton would be comparable to those enjoyed by La Montagne, they would be able to point to the Sutton offer as proof that they did not have a motive to save costs in discharging La Montagne.

■ We think it questionable whether the motivation postulated by La Montagne's theory would in itself constitute age discrimination. But it is a question we need not reach, for we hold that a reasonable jury could not conclude from the evidence presented that the theory is true. There is no direct evidence in support of

---

**3.** *See Monroe v. United Airlines, Inc.,* 736 F.2d 394, 403 (7th Cir.1984); *see also Furnco Construction Co. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Not all circuits are in agreement. *See Reeves v. General Foods Corp.,* 682 F.2d 515, 523 (5th Cir.1982).

the theory, and the circumstantial evidence is too insubstantial to support it. La Montagne argues for his theory by trying to show that the offer to Sutton was a sham, because Bark knew that Sutton would not accept the offer and even tailored the terms to induce him to decline. But there is no evidence that Bark knew that Sutton would not accept or that he did not want Sutton to accept. It is true that Martin expressed a doubt to Bark that Sutton would take the job because it would require him to relocate, but even if Bark shared this doubt, it could not reasonably be inferred from this that the offer was a sham. Employers often make job offers to candidates they believe to be best qualified for the job, even though they know that the candidate has reasons that may incline him not to accept. Furthermore, Bark traveled personally to the west coast to make the offer; he offered Sutton a $10,000 raise and an improved assortment of fringe benefits; he did not insist on an immediate answer but gave Sutton 10 days to decide. La Montagne argues that if Bark had really wanted Sutton as the replacement, he could have offered more generous terms. But Bark could have wanted Sutton without wanting him at all costs; he was not obliged to make an extravagant offer merely to prove his bona fides. The terms Bark offered were not so unattractive that a reasonable jury could infer from them that Bark intended to induce Sutton to refuse the offer.

La Montagne also argues that the timing of the Sutton offer is evidence that it was a sham. It is clear that Bark wanted La Montagne's replacement to be "on board" to conduct the national sales meeting in July. La Montagne argues that the offer to Sutton could have been made at any time after the December 1979 board meeting, when Bark decided to discharge La Montagne; Bark delayed the offer until shortly before the national sales meeting because he knew that Sutton would not relocate his family on such short notice, so as to be in Milwaukee by mid-July. Ibsen, on the other hand, already lived in Milwaukee. A reasonable jury could not accept this argument on the basis of the evidence presented and the reasonable inferences therefrom. We accept it as established that Bark decided to discharge La Montagne at the December 1979 board meeting. It is nevertheless clear that he did not act on the decision until after the April 1980 quarterly meeting. There is no evidence that he had decided before April to offer the job to Sutton or that the delay of La Montagne's discharge had anything to do with Sutton. According to Bark's explanation, once he had renewed his decision to discharge La Montagne in April, the timing of the action was controlled by his desire to have La Montagne on the job until after the National Restaurant Association show in the last part of May and to have his replacement in place by the time of the national sales meeting in mid-July. The timing of the offer to Sutton was controlled by the timing of La Montagne's discharge. A reasonable jury could not reject this plausible account of the timing of the Sutton offer and embrace in its stead a speculation that is unsupported by any evidence.[4]

4. La Montagne argues that even if the offer to Sutton was bona fide, it involved age discrimination, because Sutton, though over 40, was 4 years younger than La Montagne. In support of this argument he points to 29 C.F.R. § 1625.2, which reads:

(a) It is unlawful in situations where [the ADEA] applies, for an employer to discriminate in hiring or in any other way by giving preference because of age between individuals within the 40–70 age bracket. Thus, if two people apply for the same position, and one is 42 and the other 52, the employer may not lawfully turn down either one on the basis of

age, but must make such decision on the basis of some other factor.

The regulation was promulgated in 1981, but we will assume arguendo that it applies to this case. We think the regulation did not add a new principle to the then existing law but merely clarified the point that an employer is not insulated from liability for age discrimination when he chooses among people in the protected class. *See E.E.O.C. v. Trans World Airlines, Inc.,* 544 F.Supp. 1187, 1218–19 (S.D.N.Y.1982). Liability under the regulation still requires that age be the determining factor in the action. We note that our ultimate conclusion that judgment n.o.v. was appropriate in no way depends on the

## IV

■ Setting aside La Montagne's cost savings theory, we now examine the evidence of age discrimination adduced at trial, in order to determine whether there is substantial evidence from which a jury could find that La Montagne had proved age discrimination directly, without resort to the *McDonnell Douglas* framework. We agree with the district court that the evidence of age discrimination is too insubstantial to support the verdict.

La Montagne's evidence is the following:

(1) Zweibel's recommendation to Bark that a "bright young individual" be hired to manage production in the Foamware Division;

(2) Martin's statement that he told Bark not to discharge La Montagne until he had a younger man to replace him;

(3) Bark's hiring of Gregory Ibsen, age 34, to replace La Montagne.

Zweibel's recommendation is irrelevant. The fact that Zweibel recommended to Bark that he hire a young person as production manager of the Foamware Division does not increase or decrease the likelihood that Bark discharged La Montagne because of his age. Any chain of inference from Zweibel's statement to La Montagne's discharge would be sheer speculation. La Montagne argues that Zweibel's letter reflects a concern with cost savings, that Bark never denied discussing cost savings with Zweibel, that Bark's declaration at the December 1979 board meeting that he would fire La Montagne was made in the context of a dispute about the size of his bonus, and that the jury could thus infer that a desire to save costs motivated La Montagne's discharge. A reasonable jury could not make such an inference.

We come now to Martin's statement, to which La Montagne gives great weight. La Montagne testified that Martin, in a telephone conversation on the evening of La Montagne's discharge, told him that he (Martin) had told Bark not to discharge La Montagne until he had a younger replacement. Martin emphatically denied telling La Montagne this. In reviewing a judgment n.o.v., we must accept La Montagne's version of disputed facts. Accordingly, we assume that Martin made the statement. We also assume that the statement was true, i.e., that Martin really did tell Bark not to discharge La Montagne until he had a younger replacement.[5] We nevertheless find that Martin's statement to Bark is not substantial evidence to support a finding of age discrimination.

It is clear that Bark had full authority, as president of the Company, to discharge La Montagne. While he consulted with Martin and David about his hiring and discharge decisions, there is no evidence that he needed their concurrence to act or that such decisions had to be joint. It is also clear that Bark alone decided to discharge La Montagne and that he alone carried out the decision. Thus the relevant inquiry is into *Bark's* motivation; to prevail, La Montagne must show that his age was a determining factor in Bark's decision to discharge him.

Martin's statement to Bark shows that Martin wanted La Montagne's replacement to be a younger man. But Martin's desires are not probative, and a reasonable jury could not infer from Martin's statement alone that Bark wanted to replace La Montagne with a younger man, still less that Bark discharged La Montagne because of his age. *See Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369, 371 (5th Cir.1980) ("That a member of the Board wanted a younger man as his *replacement* does not mean that he was *terminated* because of his age.") (emphasis in original).

■ The third item of evidence, Bark's hiring of Ibsen as La Montagne's replacement, is likewise too insubstantial to sup-

---

assumption that the replacement of La Montagne with Sutton could not involve age discrimination, an assumption which we nowhere make.

5. Bark testified that Martin was concerned that La Montagne might be terminated without a replacement. He did not say that Martin had spoken of a younger replacement.

port an inference of age discrimination. It is not a violation of the Act to replace an employee in the protected class with a younger person, as long as the protected employee is not replaced because of his age. Because younger people often succeed to the jobs of older people for perfectly legitimate reasons, the mere fact that an older employee is replaced by a younger one does not permit an inference that the replacement was motivated by age discrimination.

We have concluded that none of the three items of evidence adduced by La Montagne is sufficient by itself to support a verdict of age discrimination. In addition, we think that their combined weight is still insufficient. The Zweibel statement remains without any evidentiary connection to La Montagne's discharge. The fact that Bark offered La Montagne's job to Ibsen after Martin told him not to discharge La Montagne until he had a younger man to replace him might suggest that Bark was influenced by Martin's remark. But merely suggestive evidence is not substantial evidence. The jury would have to infer either that Martin's statement expressed some previous understanding that Bark shared or that Bark adopted Martin's statement as his own view, in order to reach the intermediate conclusion that *Bark* wanted to replace La Montagne with a younger man. The jury would then have to take the further step of inferring that a determining reason in Bark's decision to discharge La Montagne was his age. We noted above that Martin's statement alone does not permit the inference to the intermediate conclusion. The fact that Bark offered La Montagne's job to Ibsen might appear to give that inference extra support. But a reasonable jury could not totally disregard the uncontested fact that Bark offered La Montagne's job to the 47-year-old Sutton first. This fact tells against the intermediate conclusion. A reasonable jury could not believe both that Bark wanted to replace La Montagne with a younger man and that Bark's first choice for the replacement was Sutton. Even though Sutton was "younger" (by 4 years), he was too

close in age to La Montagne to be the first choice when youth is a prime desideratum. The chain of inference from Martin's statement to Bark's discriminatory motivation is thus too tenuous to permit a reasonable jury to adopt it, even in the face of the fact that Bark offered La Montagne's job to Ibsen. We conclude that the evidence of age discrimination is too insubstantial to support a jury verdict based on direct proof.

## V

We turn now to the question whether there is substantial evidence to support the verdict when the indirect *McDonnell Douglas* form of proof is used. We conclude that there is not.

We consider first whether La Montagne has adduced substantial evidence to support a prima facie case. Of the four necessary elements, *see supra*, § II, there is no doubt that (1), (3), and (4) are proved; only the second, that his job performance was generally satisfactory, requires our analysis.

La Montagne's evidence that his job performance was satisfactory consists of the following facts: while La Montagne was vice president of marketing and sales, the Company's annual sales grew from $9 million to $20 million; La Montagne received regular annual raises, which increased his salary from $32,250 in 1974 to $55,000 in 1980. He received a bonus each year, ranging in amount from $3,000 in 1974 to $16,500 in 1979, approved in each case by unanimous vote of the board of directors, *viz.* Bark, Martin, and David. Each time he was awarded a bonus, the minutes of the board meeting recited that it was in recognition of his contribution to the Company. His personnel file contained no adverse evaluations or comments of any sort, and no employee had expressed in writing any dissatisfaction with his job performance. On March 7, not four months before his discharge, David informed La Montagne's bank that his prospects for contin-

ued employment were good. He was never warned that his job was in jeopardy.

There is some evidence that La Montagne's job performance was not satisfactory, e.g., the inability of the Foamware Division to operate profitably, for which La Montagne may have been partly responsible. On review of judgment n.o.v. we do not weigh conflicting evidence but only inquire whether the evidence in favor of the position of the party winning the verdict is sufficiently substantial to support a jury verdict in that party's favor. We conclude that the evidence adduced by La Montagne that his job performance was generally satisfactory is sufficiently substantial. A reasonable jury could therefore conclude that La Montagne had proved a prima facie case of age discrimination.

The burden then fell on the Company to articulate lawful reasons for the discharge. The Company stated that La Montagne was discharged because of a persistent problem of communication with Bark and because La Montagne had caused divisiveness in the sales and marketing division. Elaborating, the company presented evidence that La Montagne was disrespectful of Bark, criticized Bark before sales and marketing people, did not keep Bark informed of his travel, and instructed sales and marketing people to keep information from Bark. We find that the Company met its burden of articulating lawful reasons for the discharge.

In order to prevail, La Montagne must prove that the Company's proffered reasons are merely a pretext, by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Our task is to determine whether there is substantial evidence to support a jury finding of pretext. We conclude that there is not.

■ La Montagne offers as evidence of pretext all the evidence of satisfactory job performance canvassed above, presumably in order to show again that his job performance was satisfactory. But to show pretext, it does not help for La Montagne to repeat the proof that his job performance was generally satisfactory. That question has already been resolved in his favor. The Company advanced specific reasons for his discharge, and his rebuttal evidence should be focused on them.

La Montagne also offers the evidence of age discrimination discussed *supra,* § IV, presumably to show that a discriminatory reason more likely motivated the employer. We found in § IV that this evidence is too insubstantial to constitute direct proof of age discrimination; we also find it too insubstantial to show that age discrimination, rather than the Company's proffered reasons, more likely motivated the discharge.

We are mindful, however, that the plaintiff need not prove that age discrimination was the only factor motivating the discharge; it need only be a determining factor among others. Thus we must also ask whether the evidence of age discrimination is sufficiently substantial to show that in addition to the Company's proffered reasons La Montagne's age was a factor, and indeed a determining factor, in his discharge. We think the evidence too insubstantial to show that age was even a factor, let alone a determining factor, in Bark's decision. The Zweibel statement is again irrelevant, and Martin's statement does not permit the inference that Bark even considered La Montagne's age, even though he eventually offered the job to Ibsen, who was younger.

■ La Montagne must thus show by other evidence that the Company's proffered reasons are unworthy of credence. This may be shown, we think, in any of three ways: by showing that the Company's reasons have no basis in fact, or, if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by

showing that they were jointly insufficient to motivate the discharge.[6]

A reasonable jury could not conclude that the Company's reasons had no basis in fact. The evidence[7] consists of David's testimony that La Montagne did not keep Bark informed of trade shows and association meetings, Martin's testimony that La Montagne did not keep Bark informed of his travel, and La Montagne's own admissions that he "may have missed some times" in communicating with Bark and that he had criticized Bark on several occasions to members of his sales and marketing staff because of Bark's failure to communicate with him. La Montagne also admitted that he had talked to Martin about lack of communication with Bark. He admitted that Martin told him that Bark felt he was not disclosing everything to Bark concerning sales and marketing and that Martin had asked him to talk to Bark about it. He admitted that Bark had told him that Bark wanted to be more involved in the sales and marketing function. La Montagne admitted that he initiated conversations with Bark concerning their communication problems. He admitted that there were personality differences between Bark and him and a distance between them. Martin summed it up in saying: "Mr. Bark just didn't know what Mr. La Montagne was doing. And so differences could never be resolved because they had no dialogue. They didn't talk." La Montagne's admissions, together with the unrebutted testimony of Martin and David, constitute a factual basis for the Company's proffered reasons.

We also find that a reasonable jury could not conclude that the Company's proffered reasons were not factors at least partly motivating the decision to discharge. It is clear that Bark was sorely vexed with La Montagne because of the lack of communication and divisiveness. He testified that at the board meeting in December 1979 he wanted to hold La Montagne's bonus to the previous year's amount and that he "was fed up with the treatment, divisiveness and the lack of communication, the situation that we are₃in ...." He also testified that at the March 6 meeting he was angered by La Montagne's failure to offer any plan for the marketing and sales of Foamware products to stop the losses and make the division profitable. He testified that when sales and marketing gave what he regarded as its usual limited contribution at the April quarterly meeting, "I decided that I had completely had it. I wasn't going to tolerate it any longer." He testified that he then met with Martin and David and told them of his decision to terminate La Montagne. In the face of this uncontradicted and unimpeached testimony a reasonable jury could not conclude that the Company's proffered reasons played no part at all in Bark's decision to discharge La Montagne.

We consider finally whether there is any substantial evidence to show that the Company's proffered reasons, while factors in La Montagne's discharge, were not the sole determining factors. We do not find any argument in La Montagne's briefs to this court bearing specifically on this point. The kinds of evidence that would be relevant would be, for example, evidence that the proffered reason for the discharge was something so far removed in time from the discharge itself that it is unlikely to have been the whole cause, even if a part of it, or evidence that the proffered reason applied with equal or greater force to another employee who was not discharged. We have surveyed the record for evidence of the proper character and have found none.

We therefore conclude that a reasonable jury could not find that La Montagne succeeded in indirectly proving that he was fired because of his age.

---

**6.** While we find this three-part analysis useful for our examination of the evidence in this case, we do not require that it always be used, nor do we hold that the three ways enumerated necessarily exhaust the possibilities.

**7.** We ignore Pirhofer's testimony, because La Montagne contradicted it.

## VI

La Montagne makes numerous arguments that we have not discussed or alluded to in this opinion. We have given careful consideration to those arguments, and we find that they do not alter our conclusion that on the evidence presented, regardless of the method of proof, a reasonable jury could not find that La Montagne was discharged because of his age. The district court thus correctly entered judgment for the Company notwithstanding the verdict, and the judgment is

AFFIRMED.