Alfred **MECHNIG**, Plaintiff,

v.

**SEARS, ROEBUCK & CO.**, Defendant.

No. 83 C 5596.

United States District Court,
N.D. Illinois, E.D.

Aug. 27, 1987.

L. Steven Platt, Arnold & Kadjan, Barry A. Gomberg, Weston, Gomberg & Reese, Chicago, Ill., for plaintiff.

Carl E. Smith, Donald J. Spero, Robin S. Rothschild, Spero Hayes & Hirshtick, Skokie, Ill., Paul E. Starkman, John F. McClure, Michael A. Stiegel, Michael J. Ranallo, Arnstein, Gluck, Lehr & Milligan, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge.

On August 12, 1983 Alfred Mechnig brought this action against Sears, Roebuck & Co. ("Sears"), alleging that Sears 1) violated the Age Discrimination in Employment Act (the "ADEA") and 2) breached its employment contract with him.

Mr. Mechnig voluntarily dismissed his wrongful discharge claim. Before the court are defendant's motions 1) for summary judgment 2) to strike certain of Mr. Mechnig's affidavits.

## BACKGROUND FACTS

The parties do not dispute the following facts.

Mr. Mechnig worked as a salesman for Sears from August of 1950 until August 5, 1982. From April 1981 until his termination Mr. Mechnig worked as an "outside salesman." During that period, outside salesmen worked eight hours per week within a Sears store; their other hours were spent making and following up on sales calls outside the store. Outside salesmen received time-and-a-half for Sunday hours.[1]

Hours worked within the store were scheduled in advance; hours worked outside the store were unscheduled. Division managers ordinarily prepared and posted schedules a week or two in advance. If schedules were not so posted, salespeople were responsible for calling the store to learn their scheduled hours.

Sears had a written policy that salesmen were to punch in and out their in-store hours on a time clock. The face of each time card provided: "I have recorded my actual starting and quitting time each day. Any falsification will subject me to immediate dismissal." Sears' written policy allowed salesmen to write in their outside hours on time cards.

Mr. Mechnig signed a series of agreements throughout his employment with Sears. The 1971, 1975, 1980 and 1982 agreements stated:

> I agree to record *all* hours worked, both scheduled and unscheduled, on my time card in the appropriate space. Failure to record my hours worked is a violation of the Fair Labor Standards Act as well as Company Policy.

On Sunday, June 27, 1982, Mr. Mechnig was scheduled to work inside the Irving Park store from 11:00 a.m. to 5:00 p.m. A Sears employee telephoned Mr. Mechnig after 11:00 a.m. that morning to inform him that he was scheduled to work. Mr. Mechnig arrived around 11:30. He wrote on his timecard that he had arrived at 11:00 a.m. At least five days later, Gary Marks, a member of store management, informed Donald Hawley, the store manager, of this discrepancy.

Mr. Mechnig was on vacation from July 4 to July 20, 1982. In late July Mr. Hawley

---

1. Defendant's Local Rule 12(e) statement provides that "Mechnig received time and one-half for any Sunday hours." Plaintiff's 12(f) statement provides that while he was "technically entitled" to time and one-half for Sunday hours, "the outside salesmen never put in for more than 40 hours due to a policy ... against overtime." Plaintiff's statement is ambiguous: it does not say whether Sears pays an overtime rate for all Sunday hours or only for those hours in excess of a forty hour week. At any rate, plaintiff did not in this respect controvert defendant's 12(e) statement; he therefore admits that he received overtime pay for his Sunday hours.

met with Mr. Mechnig and asked him about his timecard covering June 27, 1982. Mr. Mechnig did not deny that he was late on June 27. Mr. Hawley reviewed Mr. Mechnig's personnel file and decided to recommend termination. On August 2, 1982 Mr. Mechnig was terminated. Mr. Mechnig was told that his dismissal resulted from his falsification of a time card and other time card procedure violations.

Mr. Mechnig had received other reprimands for errors in time card procedure. A September 25, 1979 corrective review stated that while someone punched Mr. Mechnig out at 6:10 p.m., he had been seen leaving the store at an earlier time.

A September 24, 1979 corrective review stated that on seven occasions Mr. Mechnig had violated Sears policy by writing (rather than punching) in his arrival/departure times.

A November 5, 1979 review stated that Mr. Mechnig was informed that any further violation of time card policy "could lead to his losing his job."

Corrective reviews dated November 28, 1978, December 3, 1977, and October 21, 1968 also document errors by plaintiff in time card procedure.

## DISCUSSION

Summary judgment should not be granted unless there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmovant. But when a reasonable trier of fact could not find for the non-movant, summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

■ An ADEA plaintiff must ultimately show that age was a determining factor of discharge. This burden can be met by presenting either direct or indirect evidence of discrimination. *Le Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). When a plaintiff proves his case indirectly, the *McDonnell–Douglas* burden-shifting analysis applies. *See McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, a plaintiff establishes a prima facie case by showing that 1) he was in the protected class, 2) he was doing his job well enough to meet his employer's legitimate expectations, 3) in spite of his performance he was discharged, and 4) the employer sought a replacement for him. *La Montagne,* 750 F.2d at 1409.

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for discharge. *La Montagne,* 750 F.2d at 1409. If the defendant presents evidence establishing a legitimate reason for its decision, the presumption raised by the prima facie case dissolves. Plaintiff must then prove by a preponderance of evidence that the reasons offered by the employer were a pretext for discrimination.

As the Seventh Circuit recently stated, a showing that a proffered justification is pretextual may itself be equivalent to a finding that the employer intentionally discriminated. *Graefenhain & Miller v. Pabst Brewing Co.,* 827 F.2d 13, 18 (7th Cir.1987). In these circumstances, the employer's decision remains unexplained and the inferences from the plaintiff's initial evidence may be sufficient to prove the ultimate fact of discriminatory intent. *Id.*

■ Assuming, *arguendo*, that Mr. Mechnig has established his prima facie case, summary judgment must nonetheless be granted in defendant's favor. Sears has presented convincing evidence that it had a legitimate nondiscriminatory motive for firing Mr. Mechnig. Mr. Mechnig has not advanced any evidence which could reasonably show that Sears' proffered reason was pretextual.

Sears has presented evidence that it terminated Mr. Mechnig for the legitimate, nondiscriminatory reason that he falsified a timecard, thereby violating company policy. Mr. Mechnig does not dispute the fact that he falsified his timecard. He argues, however, that age animus, rather than a con-

cern for company procedure, motivated Sears: that Sears' proffered reason is pretext for age discrimination.

Pretext can be shown by proof that 1) the proffered reason had no basis in fact, 2) that the proffered reason did not actually motivate discharge or 3) that the proffered reason was insufficient to motivate discharge. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414–15 (7th Cir.1984). Mr. Mechnig does not attempt to show that Sears' proffered reason—the timecard violation—had no basis in fact; Mr. Mechnig concedes that he submitted an inaccurate timecard. Mr. Mechnig instead attempts to show that his falsification of the timecard did not motivate Sears' termination of him. He does this by arguing that Sears did not enforce the written timecard policy.

Mr. Mechnig did not present evidence from which a jury could reasonably conclude that Sears' proffered reason is pretextual. This court will address in turn each piece of plaintiff's evidence.

### 1. *Plaintiff's Testimony*

Mr. Mechnig testified in his deposition that Sears had "pressured" many fulltime employees to quit or to take early retirement. This testimony does not raise a genuine issue as to whether Sears terminated Mr. Mechnig because of his age. Much of Mr. Mechnig's testimony consists of speculation, hearsay, and legal conclusions and must therefore be disregarded. *See* Fed.R. Civ.P. 56(e); *Liberles v. County of Cook*, 709 F.2d 1122, 1129 (7th Cir.1983).

For example, Mr. Mechnig testified that Mr. Hawley pressured oldtimers to leave by "nitpicking" over their work. But Mr. Mechnig concedes that Mr. Hawley never told him (or any other "oldtimer") that he expected more from him. And Mr. Mechnig did not make clear whether he believed that Mr. Hawley was harder on all *fulltime* employees or on only *older* fulltime employees. He also failed to give an example

to support his impression; he did not cite an instance in which Mr. Hawley demanded more of an older employee than of a younger one. For example, while Mr. Mechnig claimed that Sears moved older employees from one department to another as a way of harassing them, he admitted that Sears also moved young employees around.

Other segments of Mr. Mechnig's testimony are simply irrelevant. Testimony about employees in other stores (Vol. I p. 38) is not relevant, as defendant's uncontradicted evidence shows that each store manager makes termination decisions as to his own employees. Even if plaintiff's testimony showed that a store manager (other than that in Irving Park store) felt hostile toward older employees, this court cannot reasonably impute that hostility to the Irving Park store management.

In sum, while Mr. Mechnig presented evidence that he and other older employees *believed* that Sears (and Mr. Hawley in particular) was hostile to older employees, he has not presented evidence which supports that belief. Because even Mr. Mechnig's evidence as to this belief is weak, this court holds that it does not raise a genuine issue as to Sears' motivation.

### 2. *Mr. Wozney's Testimony*

Mr. Wozney—a full-time manager of a department adjacent to plaintiff's—testified that since Mr. Hawley became store manager: 1) Irving Park employees are more fearful of losing their jobs, 2) "there has been a tendency to write employees up more often," 3) Sears has tried to reduce the full time and managerial staff and 4) there are few fulltime employees left.[2] He also testified that he allowed outside salesmen in his department to, regardless of the actual hours they had worked, write in 40 hours on their timecards, so long as the timecards didn't require overtime pay.

Mr. Wozney's testimony, considered alone or with plaintiff's other evidence, does not raise a genuine issue of material

---

**2.** While Mr. Wozney also testified that he overheard some managers say that a fulltimer cost more than a parttimer, he could not identify the time, date or participants in this conversation.

This court therefore does not consider this as evidence for purposes of summary judgment. *See* Fed.R.Civ.P. 56(e).

fact. His testimony that since Mr. Hawley's arrival all Irving Park employees are more fearful of losing their jobs and are more often written up does not support his proposition that *older* employees are treated less favorably than young employees. Neither does his testimony that Sears has reduced its full time staff raise a genuine issue of material fact, as he also testified that 1) those full timers who left were not replaced 2) all the remaining fulltimers are over 40 and 3) 30% of the part timers are over 40. Finally, Mr. Wozney's testimony that he approved inaccurate timecards unless these cards would result in overtime pay is not relevant, as 1) Mr. Wozney did not set timecard policy for salesmen in plaintiff's department and 2) plaintiff admitted that his falsified June 27, 1982 timecard would have required overtime pay. *See* Footnote 1, *supra.*

### 3. *Mr. Kempf's affidavit*

Mr. Kempf—a fulltime, Irving Park Division Manager—stated in his affidavit that 1) Sears' timecard policy had changed over the 37 years that he worked there, 2) he would have approved plaintiff's June 27, 1982 timecard because plaintiff was not habitually late and outside salesmen generally worked more than 40 hours a week outside the store; 3) in 1980 Sears "appeared to adopt a policy of closer supervision which resulted in a large number of career people who were also over 40 being forced out, fired or leaving."

Mr. Kempf's affidavit does not raise a genuine issue of material fact. This court does not place great weight on Mr. Kempf's statement that Sears' timecard policy had changed periodically, as Mr. Kempf did not state that it was Sears' policy during June of 1982 to permit outside salesmen to falsely report hours for which they would receive overtime pay. Mr. Kempf's statement that he would have approved plaintiff's timecard is irrelevant, as Mr. Kempf did not have the authority to do so (or to participate in the decision to fire plaintiff).

Finally, this court places little weight on Mr. Kempf's statement that Sears "appeared to adopt a policy of closer supervision which resulted in a large number of career people who were also over 40 being forced out, fired or leaving." This statement is tentative, conclusory and too broad to be very probative. Specifically, Mr. Kempf did not say that Sears had closely supervised only *older* employees. And this court cannot attribute voluntary departures (including those resulting from close supervision, if that supervision is *uniformly* close) to age discrimination. *See generally Henn, et al., v. National Geographic Society,* 819 F.2d 824 (7th Cir.1987).

### 4. *Statistics*

Plaintiff submitted statistical evidence covering 5480 salespersons who left Sears in 1981 or 1982. Dr. Malone, plaintiff's statistical expert, concluded from this evidence that older employees were terminated at a higher rate than that at which they would have left on their own.

Plaintiff's statistical evidence does not raise a genuine issue as to Sears' motive for terminating plaintiff. Plaintiff's statistics have little probative value. First, Dr. Malone did not include outside salesmen in his data, as he decided that their jobs differed significantly from the other sales positions. Second, Dr. Malone did not present individualized data for the Irving Park store. Where (as at Sears) individual stores make termination decisions, individual store statistics are the most probative. *See Dugan v. Ball State University, et al.,* 815 F.2d 1132 (7th Cir.1987). Finally, the assumption underlying most of Dr. Malone's tables is flawed. Dr. Malone assumed that all employees who retired under Sears' voluntary retirement program were terminated involuntarily. After *Henn, et al. v. National Geographic Society,* 819 F.2d 824 (7th Cir. May 29, 1987), this court cannot accept Dr. Malone's assumption. Disregarding, therefore, Dr. Malone's data on voluntary retirees, only 13% of the 334 employees terminated in 1981 and 12% of the 337 employees terminated in 1982 were between the ages of 40 and 70. This court cannot conclude that

**1272**

this data raises a genuine issue as to Sears' motive for terminating plaintiff.

### 5. *Mr. Stracek's Affidavit*

Mr. Stracek—an Irving Park outside salesman—stated in his affidavit that 1) Sears did not require outside salesmen to punch in for in-store hours, 2) outside salesmen were not required to fill in the exact hours worked, so long as the hours added up to 40 hours a week, 3) many times salesmen filled in cards with 40 hours when they had worked over 40 hours.

Mr. Stracek's affidavit—taken alone or with plaintiff's other evidence—does not raise a genuine issue of material fact. While Mr. Stracek provides some evidence that Sears did not require outside salesmen to fill in their exact hours, he does not say that Sears sanctioned inaccurate timecards under the circumstances present in this case. Specifically, Mr. Stracek does not suggest that Sears allowed outside salesmen to falsely record inside-store hours which required overtime pay.[3] Mr. Stracek has not, therefore, provided evidence that Sears would have retained a younger employee who acted as plaintiff did:[4] who, in the context of repeated errors in timecard procedure, falsified a timecard so as to receive overtime pay.

### 6. *Mr. Spoto's Deposition*

Mr. Spoto testified that after Mr. Hawley became store manager, Irving Park employees were supervised more closely and treated more harshly than before. Mr. Spoto's testimony would not permit a jury to reasonably infer that Sears harbored age animus, as he described only Sears' treatment of *all* its Irving Park employees before and after Mr. Hawley's arrival. Mr. Spoto did *not* say that Sears (or Mr. Hawley) treated older employees more harshly than it treated younger employees.

In sum, plaintiff has not presented evidence from which a jury could reasonably find that Sears terminated plaintiff because of his age. In particular, plaintiff has failed to present evidence that Sears' proffered reason for terminating plaintiff was a pretext for age discrimination. Plaintiff presented no evidence that Sears had retained younger outside salesmen who falsified their timecards so as to obtain overtime pay.

### CONCLUSION

For the foregoing reasons defendant's motion for summary judgment is GRANTED. Defendant's motion to strike certain of plaintiff's affidavits is DENIED, with the assurance that this court has, as indicated in its opinion, disregarded those portions of the affidavits which contain inadmissible evidence.

3. Plaintiff stated in his affidavit that he had worked six consecutive days during the week of June 27, 1982. Drawing reasonable inferences in plaintiff's favor, this court will infer that he worked over 40 hours during that week.

4. Nothing in plaintiff's other evidence, *e.g.,* Mr. Wozney's and Mr. Mechnig's depositions (pages 25–26 and pages 20–23) requires a different conclusion. While plaintiff testified that salesmen routinely violated Sears' timecard policy, he admitted that Sears may not have known of these violations. Without evidence that Sears *sanctioned* timecard policy violations, plaintiff's testimony does not show that Sears did not fire plaintiff for his own timecard policy violation.