**Emil V. REAL, Plaintiff,**

v.

**The CONTINENTAL GROUP, INC., a corporation, and Continental Can Company, a corporation, Defendants.**

No. C–83–2871.

United States District Court, N.D. California.

Jan. 17, 1986.

436

Orrick, Herrington & Sutcliffe by Cynthia L. Remmers, Laurie J. Miller and Gary R. Siniscalco, San Francisco, Cal., for plaintiff.

Thelen, Marrin, Johnson & Bridges by Janet F. Bentley, Christopher J. Rillo, and Janice Lehrer-Stein, San Francisco, Cal., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff, Emil V. Real, filed this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and a parallel provision of the California Fair Employment and Housing Act (FEHA), Cal.Govt.Code § 12941, charging

that he was demoted, denied certain job opportunities and ultimately forced out of his job by the defendants, The Continental Group, Inc. and Continental Can Company (Continental), because of his age. The plaintiff also charged the defendants with breach of an employment contract between the parties and with violation of the covenant of good faith and fair dealing.

Following a trial on the merits, the jury returned a special verdict finding that the defendants had willfully discriminated against the plaintiff because of his age. The jury awarded Mr. Real damages for lost past compensation (back pay) of $132,910.00 but did not award the plaintiff punitive damages or damages for emotional distress or for lost future compensation (front pay). Pursuant to the jury's special verdict, the court entered judgment for the plaintiff in the amount of $265,820; this figure included $132,910 in back pay damages and a like amount in liquidated damages for the defendants' willful discrimination.

Continental has moved for judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for remittitur or a new trial on the question of back pay damages pursuant to Federal Rule of Civil Procedure 59. The plaintiff has also moved for judgment notwithstanding the verdict as to several of the jury's findings or, alternatively, for a new trial. Both motions for judgment notwithstanding the verdict will be denied as will the plaintiff's alternative motion for a new trial. The defendants' motion for a partial new trial will be denied conditioned upon the plaintiff's acceptance of a remittitur of damages to the extent they exceed $50,000. If the plaintiff does not accept the remittitur, a new trial will be held on the limited issue of back pay damages.

Additionally, the defendants have filed objections to the plaintiff's bill of costs. This dispute will be held in abeyance pending the plaintiff's acceptance of the remittitur or, if refused, the resolution of the partial new trial.

## BACKGROUND

Mr. Real, born January 27, 1924, went to work for Continental in 1950. From 1950 until 1975, he held various engineering positions with the company, receiving several promotions and regular merit pay increases in recognition of his job performance. In 1975, he was promoted to Manager of Industrial Engineering for Continental's Pacific Division, a grade E–15 position.

In 1980 and 1981, as part of a company reorganization effort, Continental consolidated several divisions, including the Pacific Division, headquartered in San Mateo, California, where the plaintiff was employed, and the Northwest Division, based in Portland, Oregon. The merger of these two divisions in June 1981 formed the Western Division, with headquarters in Portland.

During the 1981 consolidation, the job of Manager of Industrial Engineering for the newly-formed Western Division was given to Paul Zinter, who was then 46 years old and the Manager of Industrial Engineering for the old Northwest Division. Mr. Zintner was selected over the plaintiff, who was then 57 years old.

Following the 1981 consolidation, Mr. Real was demoted five grades to the position of Supervisor of Industrial Engineering in Continental's San Mateo office. His salary and benefits remained the same as they had been in his previous grade E–15 position.

As part of a subsequent company reorganization in early 1982, Mr. Real's position as Supervisor of Industrial Engineering was eliminated. The plaintiff was offered the job of Supervisor of Quality Control (grade E–11) at Continental's Pittsburg, California, plant, but he was not granted relocation benefits. Mr. Real declined the offer, which subsequently was accepted by H.L. Kaeser, then 59 years of age.

Continental denied Mr. Real's request that he be given the job of Supervisor of Quality Control at the company's San Jose, California, plant. That position went to E.J. Leek, then aged 57.

Finally, in February 1982, Continental offered Mr. Real the position of Plant Buyer for the San Jose Plant, a grade E–6 job. In that position, Mr. Real would have retained his previous salary and benefits. However, in late February 1982, Mr. Real stopped working for Continental, although he received his full salary through June 1982.

In support of their motion for judgment notwithstanding the verdict or, in the alternative, for remittitur or a new trial on the issue of back pay damages, the defendants contend that (1) there is insufficient evidence to support the jury's finding that the defendants discriminated against the plaintiff because of his age in its decision to award the Portland job to Paul Zinter or in its subsequent employment decisions concerning the plaintiff; (2) there is insufficient evidence to support the jury's finding that the defendants constructively discharged the plaintiff; (3) there is insufficient evidence to support the jury's finding of willful discrimination; and (4) there is no evidence to support the jury's award of back pay damages to the plaintiff.

The plaintiff supports his motion for judgment notwithstanding the verdict by contending that there is not sufficient evidence to support the jury's findings that (1) Continental's 1983 offer to reinstate the plaintiff to a comparable position was made in good faith; and (2) the plaintiff was not entitled to punitive damages. The plaintiff further requests that the court reject the jury's finding denying lost future compensation and instead find that he is entitled to such an award because he reasonably refused reinstatement.

The plaintiff's alternative motion for a new trial is based on his contentions that (1) there is insufficient evidence to support the jury's finding that the 1983 reinstatement offer was made in good faith; (2) there is insufficient evidence to support the jury's finding that the plaintiff is not entitled to punitive damages; (3) there is insufficient evidence that the plaintiff's rejection of the reinstatement offer was unreasonable; (4) the court erred in its instructions regarding liquidated and punitive damages;

(5) the jury verdict concerning damages is inconsistent; and (6) the court erred in directing a verdict for the defendants on the plaintiff's common law claims.

The court will consider first the parties' claims relating to issues of liability. Damage issues raised in the respective motions will then be considered.

## LEGAL STANDARDS

Entry of judgment notwithstanding the verdict is appropriate only if the court finds that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support but one reasonable conclusion. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1026 (9th Cir.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The court may not consider the credibility of the witnesses nor may it weigh the evidence to reach a result that it finds more reasonable than that arrived at by the jury. *Id.* Judgment notwithstanding the verdict will not be granted if the jury verdict is supported by substantial evidence. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 329, 83 L.Ed.2d 265 (1985).

A new trial, in contrast, will be ordered if the court finds that "the jury's verdict was clearly contrary to the weight of the evidence." *William Inglis, supra*, 668 F.2d at 1027. If the court, viewing the evidence in the light most favorable to the prevailing party, finds that the damage award is excessive, it may either grant the new trial motion or deny the motion conditioned upon the prevailing party's acceptance of a remittitur of the damage award. *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir.1983).

## LIABILITY ISSUES

I. Liability for Age Discrimination

A. Plaintiff's Burden of Proof

To meet his burden in an age discrimination case, the plaintiff must

prove that age was a determining factor in the employer's challenged conduct in the sense that "but for" the discrimination the allegedly unlawful conduct would not have occurred. *Kelly v. American Standard, Inc.*, 640 F.2d 974, 984 (9th Cir.1981). Because the plaintiff in the case at bar relies on a disparate treatment theory, proof of Continental's discriminatory intent is required. *Sakellar v. Lockheed Missiles and Space Co.*, 765 F.2d 1453, 1455 (9th Cir. 1985).

■ The plaintiff may attempt to meet his burden directly, by presenting direct or circumstantial evidence of discriminatory motive, or indirectly. The Ninth Circuit Court of Appeals employs a modified version of the formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to cases involving indirect proof of age discrimination. *Douglas v. Anderson*, 656 F.2d 528, 531–32 (9th Cir.1981). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of age discrimination by a preponderance of the evidence. *Id.* at 531. The specific elements of the prima facie case vary depending on the facts of each case. *Id.* at 532.

Proof of a prima facie case raises an inference of discrimination which a defendant can rebut by producing evidence of a legitimate, nondiscriminatory reason for the challenged employment decisions. *Sakellar, supra,* 765 F.2d at 1455. If the defendant presents such evidence, the burden shifts back to the plaintiff to prove by a preponderance that the defendant's stated reasons were not its true reasons but were a pretext for age discrimination. The plaintiff may establish pretext by showing either that a discriminatory reason more likely than not motivated the defendant or that the reasons offered by the defendant are not worthy of credence. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984). The *McDonnell Douglas* test compensates for the evidentiary difficulties often encountered in age discrimination cases "by permitting the plaintiff to prove his case by

eliminating all lawful motivations, instead of proving directly an unlawful motivation." *Id.*

The prima facie threshold is no longer a relevant issue once the defendant has proffered legitimate, nondiscriminatory reasons for its actions. *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Sakellar, supra,* 765 F.2d at 1455. The sole remaining issue is whether sufficient evidence is presented from which the trier of fact could find that the defendant intentionally discriminated against the plaintiff. *See Sakellar, supra,* 765 F.2d at 1455. Because the defendants' proffered reasons for the challenged conduct were before the jury in the case at bar when it rendered its verdict, the court will not consider the defendants' contention that the plaintiff failed to establish his prima facie case.

### B. Employment Decisions Concerning the Plaintiff

Continental first contends that there is insufficient evidence to support the jury's finding that Continental discriminated against Mr. Real because of his age when it selected Paul Zinter rather than the plaintiff for the Portland-based industrial engineering position or in its subsequent employment decisions concerning the plaintiff. The defendants produced evidence that they hired Mr. Zinter for the Portland position because his financial expertise best qualified him for the job, he already was located in the new regional headquarters in Portland, and the company believed that the plaintiff was unwilling to relocate from the San Francisco Bay area.

There was substantial evidence presented at trial from which the jury reasonably could have found that the defendants proffered reasons were pretextual. Although the evaluation of the financial skills of Mr. Real and Mr. Zinter varied depending upon the witness testifying, there was evidence before the jury that Mr. Real had strong financial skills and experience while Mr.

Zinter's job performance was deficient in certain important respects.

First, Mr. Real testified that as Manager of Industrial Engineering for Continental's Pacific Division he was required to complete financial analyses of various company operations. T.A. Morris, Manager of Finance for Continental's Pacific Division from 1974 to 1981, testified that based on his experience reviewing Mr. Zinter's work, Mr. Zinter displayed no particular strength in the area of financial analysis. Mr. Morris also testified that Continental's Pacific Division was far more complex than the company's Northwest Division, indicating that Mr. Real's position prior to the 1981 consolidation required stronger management skills than did Mr. Zinter's pre-consolidation job.

Allen Orheim, who as Continental's Western Division Manager of Human Resources had input into the decision whether to offer the plaintiff the Portland job, testified by way of deposition that he believed Mr. Real to be a better performer than Mr. Zinter. Robert Wellise expressed the same opinion. In addition, both Mr. Morris and Rick Guiol, who had supervised Mr. Zinter as well as Mr. Real, testified that financial planning was a minor part of the Portland job for which Mr. Zinter was selected.

Mr. Guiol further stated that Mr. Zinter often arrived late for work, procrastinated in completing his work assignments, did not like to travel, thereby hindering his ability to work in the field, and socialized too much while at work. Herman Madrid, who occupied the office next to Mr. Zinter's, concurred in Mr. Guiol's assessment. Mr. Guiol characterized the plaintiff's performance as outstanding, and expressed the opinion that Mr. Zinter was weak in the areas of performance improvement, coordination and planning with manufacturing facilities, and cost-reduction planning, all important parts of the industrial engineering job. The record did not disclose any such criticism of Mr. Real.

■ Continental officials further testified that Mr. Zinter was selected for the industrial engineering position because he already was based in Portland. Evidence presented at trial, however, established that the company repeatedly moved managers to Portland from distant locations rather than simply offering management positions to persons already in the Portland office. Thus, considered in light of the evidence suggesting Mr. Real's superior qualifications for the Portland job, the jury reasonably could have concluded that this particular reason was in fact pretextual.

■ The defendants finally claim that they did not offer the Portland job to Mr. Real because they did not believe that he was willing to relocate from the Bay Area. The defendants asserted that they based this presumption on the plaintiff's 1978 and 1980 personnel, or Conopath, forms. On both forms the plaintiff indicated that he did not want to relocate. While the authenticity of the 1978 form is not in dispute, the plaintiff testified that he did not sign or date the 1980 form, suggesting thereby that the company may have falsified the document. The plaintiff's testimony created a factual dispute within the province of the jury and not the court to resolve.

Moreover, Mr. Madrid testified that despite the fact that he had filled out a company form indicating his unwillingness to relocate, he was moved several times by Continental. Jack L. Crawford, Plains Division Manager of Human Resources prior to the 1981 consolidation of Continental's divisions, testified by way of deposition that William Kissel, Manager of Industrial Engineering for the Plains Division, was interviewed and considered for positions with the company on the east coast even though he had told Mr. Crawford that he did not want to relocate. Mr. Crawford also stated that displaced employees, with rare exception, always were interviewed for a position for which they were under consideration. Mr. Real, however, was not interviewed for the Portland job. In sum, there was substantial evidence for the jury to conclude that Continental's stated reasons for choosing Mr. Zinter rather than Mr. Real for the Portland job were pretex-

tual, thus supporting a finding of age discrimination.

■ In addition, there is ample evidence from which the jury reasonably could find that Continental's stated reasons for denying the plaintiff promotional opportunities and relocation benefits in its subsequent employment decisions involving the plaintiff were a pretext for age discrimination. The company's assertions that it did not consider the plaintiff for promotional opportunities because of his unwillingness to relocate were not impressive and quite reasonably could have been rejected by the jury.

Not only did the plaintiff communicate his disappointment at not receiving the Portland job to Robert Lazarus in June 1981, but he also testified that during the summer of 1981 he told Robert Wellise that he was willing to listen to any position that the company offered him. There was, therefore, sufficient evidence from which the jury could reasonably infer that the company knew, at least by the summer of 1981, that the plaintiff was willing to relocate.

When following Continental's early 1982 reorganization the company offered Mr. Real the position of Manager of Quality Control at the Pittsburg, California, plant, the plaintiff asked for relocation benefits. Although the Pittsburg plant is approximately 70 miles from the plaintiff's San Mateo home, the company denied his request. Continental asserted that it denied the plaintiff's request because it did not have a policy to award relocation benefits in such a situation.

Mr. Morris testified, however, that when the company wanted to transfer someone, it would reimburse employees for their relocation expenses when the move was over 25 miles. Dan L. Sprinkel, manager of the Pittsburg plant, for example, was given relocation benefits although his move to take the Pittsburg job was only 50 miles. Further, Mr. Madrid testified that Continental paid his relocation expenses for several job moves of approximately 40 miles each. Viewing the evidence in the light most favorable to the plaintiff, the jury reasonably could have concluded that the company's stated reasons for denying the plaintiff promotional opportunities and relocation benefits after he was denied the Portland job were pretextual.

Underlying all of the previously-cited evidence in the case is the June 1981 slide presentation, put together by John P. Benton and approved by company management, in which the industrial engineering supervisors were characterized as "nonpromotable blockers." The slide presentation also listed industrial engineering managers by their age and length of service. Moreover, supervisors of industrial engineering, including Mr. Real, were listed by their age and length of service with reference to two Continental job openings. The comment "almost zero youth" accompanied this portion of the slide presentation.

Finally, Mr. Morris testified that Mr. Orheim told him in early 1983, after Mr. Real had filed his discrimination charge with the United States Equal Employment Opportunity Commission (EEOC):

"Look, T.A., the age discrimination law is a weak one. By the time when Emil files his protests we will have several months to answer this thing and it will be back and forth and in time, it will be forgotten."

Although not ultimately responsible for hiring decisions, Mr. Orheim testified that he was consulted in the decision whether to offer the Portland job to the plaintiff in June 1981. Mr. Orheim denied making the statement recalled by Mr. Morris. The court, however, will not impinge on the jury's function to assess the credibility of the witnesses.

The slide presentation and the Orheim comment are impressive evidence to support a finding of age discrimination, and when considered in light of the entire record in the case, these two evidentiary items strongly support the jury's finding of age discrimination. In sum, there was very substantial evidence to support the jury's finding that age was a determining

factor either in Continental's decision to award the Portland job to Mr. Zinter rather than to the plaintiff, or in its subsequent employment decisions concerning the plaintiff.

## C. Constructive Discharge

 The defendants next contend that the evidence was insufficient to support the jury's finding that Mr. Real was constructively discharged by Continental because of his age. To establish constructive discharge, the plaintiff must prove that the employer deliberately made his working conditions so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign. *Nolan v. Cleland,* 686 F.2d 806, 813–14 (9th Cir. 1982). In reviewing constructive discharge claims, courts look for "aggravating factors," as, for example, a continuous pattern of discriminatory treatment. *Satterwhite v. Smith,* 744 F.2d 1380, 1382 (9th Cir.1984).

 The evidence in the present case is sufficient to support the jury's finding of constructive discharge. After being passed over for the position of Manager of Industrial Engineering in the June 1981 consolidation, Mr. Real was demoted five grades to Supervisor of Industrial Engineering, grade E–10. When this position was eliminated in January 1982, the plaintiff was offered the Pittsburg quality control position, grade E–11, but his request for relocation benefits was denied, and he declined the offer. When Mr. Real instead inquired about the quality control position at the company's San Jose plant, located quite close to his home, he was informed that someone with more quality control experience was needed. Although there was evidence that the plaintiff had been recommended for the San Jose job by the plant's manager and was well-qualified for the position, the job was offered to an individual of approximately the same age as the plaintiff. Finally, Continental offered Mr. Real the buyer's job for the San Jose plant, a nine-grade demotion from the position he had occupied prior to the June 1981 consolidation.

Mr. Real's career at Continental was moving in reverse with no apparent hope of any advancement at the time he left the company in February 1982. Earlier in this decision I expressed my conclusion that the evidence is sufficient to support a finding that the company's stated reasons for not offering the Portland job to the plaintiff, and for denying him relocation benefits and promotional opportunities were a pretext for discrimination. Accordingly, there was a sufficient basis for the jury to find that a reasonable person in Mr. Real's position would have felt compelled to resign when he did.

 Continental makes much of the fact that despite the plaintiff's demotion and job offers graded substantially below the job he held prior to June 1981, Mr. Real suffered no reduction in his salary or benefits. This fact alone is not enough to defeat the jury's finding of constructive discharge. *See Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1530–31 (11th Cir.1985).

The defendants also cite the case of *Frazer v. KFC National Management Co.,* 491 F.Supp. 1099 (N.D.Ga.1980), *aff'd without opinion,* 636 F.2d 313 (5th Cir. 1981), in opposing the jury's constructive discharge finding. In *Frazer,* the district court concluded that the evidence was insufficient to support a finding of constructive discharge where the plaintiff quit instead of accepting a demotion to a position of substantially reduced responsibility but in which he would have retained the same salary and benefits as in his previous position.

The *Frazer* case is readily distinguishable from the present matter. Unlike the plaintiff in the case at bar, the plaintiff in *Frazer* alleged only a single instance of demotion and did not claim that he was otherwise discriminated against. In contrast, the evidence in the case at bar is sufficient to support the conclusion that the plaintiff was subjected to a continuous pattern of discriminatory treatment over a

period of several months involving the deprivation of promotional opportunities, the denial of relocation benefits, and culminating in the offer of a nine-grade demotion. Moreover, unlike Mr. Real, the plaintiff in *Frazer* stated that he turned down one of the positions he was offered because the job would have involved extensive travel which he did not like.

### D. Willful Discrimination

 The defendants also argue that the evidence is insufficient to support the jury's finding that Continental's age discrimination against Mr. Real was willful. A violation of the ADEA is willful if the employer knew or acted with reckless disregard for whether its conduct violated the Act. *Trans World Air Lines, Inc. v. Thurston,* —— U.S. ——, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). The plaintiff need not prove that the defendant intended to violate the ADEA. "In a discriminatory treatment case, such as this, an employer's action, if taken *because of* an impermissible factor such as age cannot be the result of negligence, mistake, or other innocent reason." *Goodman v. Heublein, Inc.,* 645 F.2d 127, 131 n. 6 (2d Cir.1981) (emphasis in original). Willfulness is not established, however, by showing that the employer "simply knew of the potential applicability of the ADEA." *Thurston, supra,* 105 S.Ct. at 625.

The defendants contend first that willfulness only is established where the evidence shows that the defendant " 'wholly disregards the law ... without making any reasonable effort to determine whether the plan he is following would constitute a violation of the law.' " *Id.* at 624 (quoting *Nabob Oil Co. v. United States,* 190 F.2d 478, 479 (10th Cir.), *cert. denied,* 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 658 (1951)). The Supreme Court recognized that this standard, applicable to willfulness determinations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* is "substantially in accord" with standards for willfulness adopted by courts in ADEA cases. *Id.*

 This standard makes sense in the context of a disparate impact case such as *Thurston,* where the validity of a facially neutral employment policy or "plan" is at issue and proof of discriminatory motive is not required. It is not directly applicable, however, to a disparate treatment case, as the present one, where the ultimate issue is whether the defendant intentionally discriminated against the plaintiff, regardless of whether the action was taken pursuant to the employer's general policy or "plan." Instead, the "reckless disregard" standard expressly approved by the Supreme Court in *Thurston* is properly applied to the present case.

Continental further asserts that direct evidence of age discrimination is required to support a finding of willfulness, citing the case of *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 604 F.Supp. 962, 966–67 (E.D.Pa.1985). In *Berndt,* the court overturned the jury's finding that the defendant's violation of the ADEA was willful because there was insufficient evidence to establish that the defendant either "intended to violate the ADEA, knew it was doing so, or recklessly disregarded its obligation under the discrimination laws." *Id.* at 967. The court noted that the basic question whether age discrimination had occurred was "extremely close," the evidence being "all circumstantial." *Id.*

 I do not read *Berndt* to hold or even suggest that only direct evidence of intentional discrimination can support a finding of willfulness. Rather, the court in *Berndt* appropriately considered the weight of the evidence in the case and found it insufficient to support a finding of willfulness.

The evidentiary rule proposed by Continental would substantially undercut the utility of the *McDonnell Douglas* test which allows the plaintiff to prove circumstantially that he has been the victim of intentional discrimination. *See Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1458–59 (9th Cir.1985); *La Montagne, supra,* 750 F.2d at 1409–10. Under *McDonnell Douglas,* proof that the defendant's

stated reasons for taking the challenged action were pretextual merges with the plaintiff's ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him because of his age. *Foster, supra,* 772 F.2d at 1453.

■ As previously discussed, there is ample evidence from which the jury could conclude that Continental's stated reasons for its employment decisions concerning Mr. Real were a pretext for age discrimination. It follows, therefore, that there is sufficient evidence to establish intentional age discrimination on the part of Continental against the plaintiff.

It is clear, moreover, from the record in this case that Continental was well aware of the requirements of the ADEA. In fact, it was required to post the requirements to alert older employees of their rights under the Act. 29 U.S.C. § 627.

Given the sufficiency of the evidence to establish with clarity and cogency that Continental intentionally discriminated against and constructively discharged Mr. Real because of his age and that the company was well aware of the ADEA requirements, there clearly is sufficient evidence that Continental acted with at least reckless disregard for whether its conduct violated the ADEA. Accordingly, the court will not disturb the jury's finding of willful discrimination.

## II. Common Law Claims

The plaintiff seeks a new trial of his common law claims for breach of contract and breach of the covenant of good faith and fair dealing contending that the court improperly directed a verdict for the defendants on these claims.

■ I find the case of *Strauss v. A.L. Randall Co.,* 144 Cal.App.3d 514, 194 Cal. Rptr. 520 (1983), to be dispositive of the plaintiff's common law claims. In *Strauss,* the court held that the plaintiff's common law wrongful discharge claim, based on an allegation of age discrimination, was preempted by the state age discrimination

law, contained in the California Fair Employment and Housing Act (FEHA), Cal. Govt.Code § 12900 *et seq.* Thus, there is no common law cause of action for age discrimination in California. *See Baker v. Kaiser Aluminum and Chemical Corp.,* 608 F.Supp. 1315, 1322 (N.D.Cal.1984); *Ambrose v. Natomas Co.,* 155 Cal.App.3d 397, 402, 202 Cal.Rptr. 217 (1984). The plaintiff's exclusive state remedy is provided by the FEHA. *Id.*

■ The plaintiff contends, however, that his common law claims are "undeniably independent of his age discrimination claim." Nonetheless, in his attempt to support his common law claims, the plaintiff presented evidence that the defendants violated both their alleged contractual duties and the covenant of good faith and fair dealing by discriminating against him because of his age. It is clear from the evidence presented by the plaintiff that his common law claims were grounded on his age discrimination charge. These claims, as a result, are preempted by the California FEHA.

The plaintiff also invites the court's attention to *Cancellier v. Federated Department Stores,* 672 F.2d 1312 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). In *Cancellier,* the court held that the federal ADEA did not preempt the award of tort damages on the plaintiffs' pendent state claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* at 1318. The plaintiffs' ADEA claims in that case were based on charges that they were terminated based on age, while their common law claims were predicated on the defendant's obligation not to deal arbitrarily or unfairly in terminating the plaintiffs' employment. Although it is true that the plaintiff in the present case charged in his complaint that the defendants acted arbitrarily and not for good cause in taking the challenged actions, he presented no evidence that the challenged actions were taken for any reason other than his age.

Furthermore, the court in *Cancellier,* unlike *Strauss* which was decided a year la-

ter, did not address the issue presently before the court but decided only that the federal age discrimination law did not preempt the state contract and covenant claims. In *Cancellier*, moreover, the court found it significant that the state claims allowed for emotional distress and punitive damages, remedies unavailable under the ADEA. *Id.* Under the California FEHA, however, "all relief generally available in noncontractual actions, including punitive damages, may be obtained." *Commodore Home Systems v. Superior Court,* 32 Cal.3d 211, 222, 185 Cal.Rptr. 270, 649 P.2d 912 (1982). Thus, unlike the ADEA, the remedies available under the California FEHA duplicate the remedies for emotional distress and punitive damages available under the plaintiff's common law claims.

## DAMAGES

### A. Continental's Offer of Reinstatement

The plaintiff urges that the evidence does not support the jury's finding that Continental's July 1983 offer to place the plaintiff as Manager of Industrial Engineering at its Oak Brook, Illinois, facility was a good faith offer of reinstatement. The plaintiff moves for judgment notwithstanding the verdict on this issue and the corollary question of front pay damages or, alternatively, for a new trial of these issues. The plaintiff does not contest the jury's finding that the offer was of a comparable position.

 The court finds sufficient evidence in the record to support the jury's finding that the reinstatement offer was made in good faith. In making the offer, Continental agreed to pay Mr. Real the difference between what he would have received had he continued working at Continental and what he actually received in pension benefits and consulting fees. The company also offered to restore him to the position in the pension and employee savings plans he would have held if he had never left the company. In addition, the plaintiff was offered complete relocation benefits, was told he would be working for Richard Baskin, and was provided with a complete written job description. The Oak Brook position rejected by the plaintiff was filled by another individual in late 1984.

The plaintiff asserts, however, that the good faith finding is insupportable because the offer was made under suspicious circumstances. He makes much of the fact that the offer was not made until approximately one and one-half years after he left Continental, only after the EEOC made its finding of age discrimination. While the timing of the offer certainly is a relevant consideration and, in this case, might support a finding that the offer was not made in good faith, the jury was not compelled to reach this conclusion. The court cannot say that as a matter of law the offer was "too late" to have been made in good faith or that reinstatement offers made after the EEOC issues a finding of discrimination are never in good faith.

The plaintiff also points out that the offer initially was made lawyer-to-lawyer at the EEOC conciliation conference and not directly by company management to Mr. Real. The plaintiff himself acknowledged, however, that he was entitled to be present at the conference. Moreover, Mr. Real received a letter directly from Continental's David Wilson offering him reinstatement. This letter was followed by a letter from Al Orheim discussing the reinstatement offer and giving the plaintiff additional time to respond to the offer. Although neither Mr. Wilson nor Mr. Baskin called the plaintiff to discuss the offer, the plaintiff likewise did not contact Continental management to discuss the offer.

 The court will not reweigh the evidence to determine whether the evidence might have supported a finding that the offer was not made in good faith. A review of the record establishes that the evidence was sufficient to support the jury's finding that the reinstatement offer indeed was made in good faith.

The plaintiff also maintains that the evidence is insufficient to establish that his rejection of the offer was not reasonable.

The jury in the present case was instructed in relevant part:

"[I]f the defendants prove by a preponderance of the evidence that they made a reasonable offer in good faith to employ the plaintiff in a position of comparable worth, that is, substantially equivalent to his former position, but that plaintiff refused to accept such offer, then the plaintiff may not recover for lost compensation after the date of his refusal.

"If, however, the evidence fails to show that any position that Continental offered was comparable to the one that he held before plaintiff's alleged discrimination, under all the circumstances under which it was made, then such offer must not affect your computation of damages. . . .

"In answering the question number nine as to whether the offer was made in good faith, you should consider the circumstances under which the offer was made and rejected, including the specificity of the terms of the job offer and the reasons for the plaintiff's refusal of the offer."

The jury, I believe, was instructed with clarity to consider the reasons for the plaintiff's rejection of the offer in determining whether the company's offer was made in good faith.

In *Ford Motor Company v. E.E.O.C.,* 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982), the Supreme Court held that "absent exceptional circumstances, the rejection of an employer's unconditional job offer [of the position originally sought by the plaintiff] ends the accrual of potential backpay liability." In applying the *Ford Motor Co.* holding, the court in *E.E.O.C. v. Exxon Shipping Co.,* 745 F.2d 967, 978 (5th Cir.1984), concluded that where an employer offers the plaintiff a different job than the specific job which he sought, "the questions of substantial equivalence and the reasonableness of the refusal of the job are for the trier of fact."

■ The question of the reasonableness of the rejection of the offer, in reality, merges with the issues of the substantial equivalence and good faith of the offer. It is not, as the plaintiff suggests, a wholly separate requirement. *See id.; Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 623 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). Stated another way, the ultimate question in considering the effect of the reinstatement offer is whether the plaintiff's refusal of the offer was reasonable. *Exxon Shipping, supra,* 745 F.2d at 978. The jury's finding that Continental's reinstatement offer was made in good faith and was comparable to Mr. Real's job prior to the age discrimination is equivalent to a finding that his rejection of the offer was not reasonable.

In my opinion, it was not error to fail to submit a special verdict question on the issue of the reasonableness of the plaintiff's refusal of the company's offer. It is not necessary to submit a special verdict question on an issue adequately addressed by another question or the instructions. *See Perzinski v. Chevron Chemical Co.,* 503 F.2d 654, 660 (7th Cir.1974). In view of the court's instructions to the jury in the present case, consideration of the reasonableness issue is implicit in the jury's answer to special verdict question number 9 regarding the nature of the reinstatement offer. It is not an issue, as the plaintiff advocates, which the court must decide.

■ In any case, there is sufficient evidence to support the jury's implicit finding that Mr. Real's rejection of the Oak Brook job was not reasonable in light of the circumstances surrounding the offer and the comparability of the position offered. In support of his contention that he reasonably refused the reinstatement offer, Mr. Real, *inter alia,* cites his own testimony and that of his treating psychiatrist that it would have been psychologically harmful for him to accept the Oak Brook job. At the same time, the plaintiff also testified that he liked Richard Baskin, who would have been his superior at Oak Brook, and could work with him. Mr. Baskin testified to similar sentiments regarding the plaintiff.

The plaintiff also notes that he was not provided with a complete organizational chart showing where the Oak Brook job fit in Continental's management structure. Nevertheless, he was provided with an informal organizational chart and a complete job description. In addition, there was nothing to prevent the plaintiff from contacting Continental personnel for answers to any questions that he had about the job.

■ Mr. Real further suggests that his refusal of the reinstatement offer was reasonable because the job was located a great distance from his California home. At trial, the plaintiff sought to prove that he was willing to relocate within Continental. It is disingenuous for the plaintiff now to claim that he reasonably refused the Oak Brook job offer because it would have required him to relocate, particularly in light of Continental's offer to provide him with full relocation benefits. *See Cowen v. Standard Brands, Inc.,* 572 F.Supp. 1576, 1581 (N.D.Ala.1983).

■ The jury's finding of willful discrimination does not mandate a negative answer to question number 9 of the special verdict. There is nothing in the ADEA or the case law to suggest that an employer found liable for willful discrimination cannot make a bona fide offer of reinstatement.

In sum, there is substantial evidence to support the jury's finding that the reinstatement offer was made in good faith, and the conclusion implicit in the jury's finding that the plaintiff's rejection of the offer was not reasonable. Accordingly, the plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial regarding Continental's July 1983 reinstatement offer and the corollary issue of front pay damages will be denied.

### B. Punitive Damages

The plaintiff asserts that he is entitled to judgment notwithstanding the verdict or, in the alternative, a new trial on the issue of punitive damages. Specifically, he claims that as a matter of law the jury should have found, based on its determination that Continental willfully discriminated against the plaintiff and constructively discharged him, that Continental acted with fraud, oppression, or malice, thereby entitling him to punitive damages. The plaintiff cites no case law in support of his proposition, and the court can find none.

The jury was instructed that it could award punitive damages under the California age discrimination law if it found that the defendants were guilty of fraud, oppression, or malice.in the employment actions involving the plaintiff. Cal.Civ.Code § 3294. Malice was defined as "conduct which was intended to ... cause injury to the plaintiff, or which is carried on by the defendant, with a conscious disregard for the rights of others." *Id.*

■ Although the Supreme Court in *Thurston, supra,* 105 S.Ct. at 624, characterized the ADEA liquidated damage provision as "punitive in nature," it did not equate the standard for liquidated damages with the standard applied under California law for the award of punitive damages. Instead the Court approved a test entitling the plaintiff to liquidated damages for willful discrimination where " 'the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " *Id.* (citation omitted). The "conscious disregard" standard for the award of punitive damages under California law is, quite simply, a higher standard than the "reckless disregard" test for a finding of willful discrimination under the ADEA. *See Taylor v. Superior Court,* 24 Cal.3d 890, 896–97, 157 Cal.Rptr. 693, 598 P.2d 854 (1979); *Johns-Manville Sales v. Workers' Compensation Appeals Bd.,* 96 Cal.App.3d 923, 932, 158 Cal.Rptr. 463 (1979). The jury's finding of willful discrimination, therefore, does not entitle the plaintiff to punitive damages as a matter of law.

■ In charging the jury, the court stated that a finding of constructive discharge might affect the consideration of the punitive damage issue because such a finding "indicates more aggravated or seri-

ous discrimination than a finding that Mr. Real was discriminated against on the basis of age, but was not constructively discharged." There is nothing to suggest, however, that a finding of constructive discharge mandates a punitive damage award under California law.

 The court also is cognizant that the determination whether to award punitive damages is entirely within the discretion of the jury. *Brewer v. Second Baptist Church,* 32 Cal.2d 791, 801, 197 P.2d 713 (1948). The court will not upset the jury's finding that the plaintiff is not entitled to punitive damages in this case. Accordingly, the plaintiff's motion for judgment notwithstanding the verdict or, alternatively, for a new trial of the punitive damage issue will be denied.

### C. Jury Instructions on Liquidated and Punitive Damages

The plaintiff next contends that he is entitled to a new trial of the damage issues in the case because the jury instructions on liquidated and punitive damages were confusing and misleading. A party is entitled to a new trial of the issues subject to error in the jury instructions when the error is prejudicial to that party. *Walker v. KFC Corp.,* 728 F.2d 1215, 1222–23 (9th Cir. 1984).

The plaintiff specifically claims that the court erred in instructing the jury that a finding of willfulness would automatically result in liquidated or doubled damages. He also asserts error in the court's instructions regarding the relationship of an award of liquidated damages to any punitive damage award.

The jury was instructed in relevant part:

"Later, I am going to instruct you … on the subject of punitive damages under the State of California age discrimination law, and I now tell you that you must be careful not to duplicate your damages.

"I just told you that under the federal law, there are liquidated damages which are equal to the amount of the damages you found for lost past compensation. In other words, the damages are doubled.

"In the punitive damages section, which relates to state law, you are also given an opportunity, if you deem it appropriate, to award punitive damages for the nature of the defendants' conduct, assuming you find it's true.

"… If you find that in answer to the question on willfulness that … the defendants' conduct was willful, then it is automatic that the plaintiff's damages for past or lost compensation will be doubled, and I urge you therefore, to be careful when you—if you get to the question of punitive damages and decide that punitive damages are appropriate under the State of California law, you remember that you already, in effect, awarded double damages by answering the willful question. …

"And once again, I ask you to remember that your punitive damage awards should not duplicate any award which may result from the liquidated damages, which will automatically be awarded by the court if you answered the willful question number four in the affirmative."

 The plaintiff claims that the net effect of these instructions was to leave the jury with the impression that the plaintiff could not recover both liquidated and punitive damages. I cannot concur in the plaintiff's reading of the instructions. The court's charge to the jury was designed to minimize the confusion arising when pendent state claims are joined with federal claims allowing different remedies. *See Cancellier, supra,* 672 F.2d at 1317. The challenged instruction is reasonably read to inform the jury that if they found willful discrimination and also determined that punitive damages should be awarded, they were not to award punitive damages to the extent that the plaintiff would otherwise receive liquidated damages. Implicit in the court's charge is the concept that the jury was free to award the plaintiff punitive damages to the extent that such an award exceeded the liquidated damage award.

In support of his claim that the court erred in informing the jury that a finding of willfulness would result in an automatic doubling of damages, the plaintiff relies on a line of antitrust cases holding that it was error for the trial court to instruct the jury that the court would treble the jury's damage award. *See e.g., Noble v. McClatchy Newspapers*, 533 F.2d 1081, 1090 (9th Cir. 1975), *vacated on other grounds*, 433 U.S. 904, 97 S.Ct. 2966, 53 L.Ed.2d 1088 (1977); *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 665–67 (5th Cir.1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Semke v. Enid Auto Dealers Ass'n*, 456 F.2d 1361, 1370 (10th Cir.1972); *contra Bordonaro Bros. Theatres, Inc. v. Paramount Pictures, Inc.*, 203 F.2d 676, 678–79 (2d Cir.1953). The Ninth Circuit Court of Appeals in *Noble, supra*, 533 F.2d at 1090–91, reasoned that "[s]uch an instruction is an invitation to the jury to negate Congress' determination that actual damages should be trebled in order to deter antitrust violations and encourage private enforcement of the antitrust laws." (Citation omitted). Treble damage instructions have been approved, however, where necessary to avoid confusing the jury. *Noble, supra*, 533 F.2d at 1091; *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1243 (5th Cir.1974); *Standard Industries, Inc. v. Mobil Oil Corp.*, 475 F.2d 220, 223–24 (10th Cir.), *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973) (treble damage instruction approved where subject discussed in pretrial newspaper publicity and in closing argument).

In the cases relied on by the plaintiff, no useful purpose was served by informing the jury of the treble damage provision. In contrast, informing the jury of the consequence of a finding of willfulness in the case at bar served the important function of avoiding confusion about why they were being asked separately whether the defendants had *willfully* discriminated against the plaintiff after already answering questions regarding age discrimination and lost past compensation. The court's instruction also clarified why the jury was being asked to determine both whether the defendants'

discriminatory treatment of the plaintiff was willful as well as whether the defendants acted with malice, fraud, or oppression so as to permit a punitive damage award. Accordingly, the court finds no error in its instructions on liquidated and punitive damages and denies the plaintiff's motion for a new trial on this basis.

### D. Back Pay Award

As an alternative to their motion for judgment notwithstanding the verdict, the defendants seek a remittitur of the plaintiff's damage award or a new trial on the issue of back pay damages. Continental asserts that there is no credible evidence to support the jury's finding that Mr. Real sustained $132,910 in back pay damages.

The jury found both that the plaintiff was not entitled to damages for emotional distress and that in 1983 Continental had made a good faith offer to the plaintiff of a position comparable to the one he held prior to the company's age discrimination against him. According to the court's instructions, therefore, Mr. Real's compensatory damages were limited to the amount of compensation, including any incidental benefits such as pay increases, that the plaintiff would have received but for the defendants' discrimination minus any compensation and benefits, including pension benefits, that he actually received or with reasonable diligence would have been able to earn from other employment, calculated from July 1, 1982, to the time the plaintiff rejected the company's reinstatement offer.

The evidence does not support the jury's back pay award in this case. Dr. Albert Fitzpatrick, the plaintiff's economic expert, testified that the plaintiff's lost past compensation through January 21, 1985, totalled $122,413. When offset by the pension benefits Mr. Real received through this date, the plaintiff's economic loss fell to $51,148, according to Dr. Fizpatrick. Adjusting this figure through the date of trial, Dr. Fitzpatrick added $6,051. Thus, according to the testimony of the plaintiff's own expert, Mr. Real's economic

loss as of the date of trial was approximately $57,000.

■ Since the jury competently determined that Continental had made a bona fide offer of reinstatement in July 1983, and since the jury also found that Mr. Real had not sustained any mental or emotional distress, the plaintiff's back pay damages must be deemed tolled as of July 1983. *Ford Motor Co., supra,* 458 U.S. at 228, 102 S.Ct. at 3063.

Dr. Fizpatrick did not testify to the plaintiffs back pay damages up to the time of Continental's offer of reinstatement in July 1983. Obviously, that figure would be substantially lower than the $57,000 back pay loss that Dr. Fitzpatrick testified the plaintiff had suffered up to the April 1985 trial. More importantly, the plaintiff himself testified that until the time of the reinstatement offer, the difference between what he had received in pension benefits and consulting fees versus what he would have received if he had continued working at Continental was approximately $25,000.

The jury's verdict of over $132,000 for lost back pay cannot be justified in light of Mr. Real's testimony that his lost past compensation at the time of the reinstatement offer was about $25,000. Even were the court to assume that the jury improperly calculated back pay damages through the date of trial, the jury verdict cannot be reconciled with Dr. Fitzpatrick's calculations indicating that the plaintiff's back pay damages totalled just over $57,000.

The plaintiff suggests that the discrepancies in the numbers can be accounted for as damages for lost promotional opportunities assessed by the jury. Specifically, the plaintiff hypothesizes that the jury may have considered David Wilson's job, with a salary of $105,000, as an opportunity wrongfully denied to the plaintiff. No evidence was presented, however, that the plaintiff was either qualified for or interested in Mr. Wilson's position. Moreover, Dr. Fitzpatrick indicated in his testimony that he accounted for projected salary increases in calculating the plaintiff's economic losses. Any award for lost pro-

motional opportunities significantly above and beyond Dr. Fitzpatrick's calculations and the plaintiff's testimony of his lost past compensation would be purely speculative and, thus, unsupportable. Accordingly, the court finds that the jury's award of lost past compensation is against the clear weight of the evidence and cannot stand.

The court next must consider whether it is appropriate to order a remittitur of the damage award or whether a new trial must be ordered on all or only some of the damage issues presented in the case. The plaintiff contends that if the court finds that the jury's back pay award is unsupportable, as it has, a new trial must be ordered on all damage issues.

■ If the jury's answers to special interrogatories reasonably can be construed consistently, the court must do so. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Only when apparent inconsistencies cannot rationally be reconciled must a new trial of the inconsistent issues be ordered. *Bates v. Jean,* 745 F.2d 1146, 1152 (7th Cir.1985); *Witt v. Norfe, Inc.,* 725 F.2d 1277, 1278 (11th Cir. 1984); *see also* Fed.R.Civ.P. 49(b).

■ In the present case, it might be argued that an inconsistency exists between the back pay award and the jury's answer to special verdict question number 9 that Continental made a good faith offer of a comparable position to the plaintiff. In making this latter finding, the jury was bound by the court's instruction that the plaintiff could not recover for lost compensation after his refusal of the offer. If it was clear from the special verdict that despite finding that Continental had made a good faith offer of a comparable position, the jury nevertheless had used the trial date as the cut off for the back pay award, an irreconcilable inconsistency would exist. That, however, is not the case here.

■ Whether the jury used the time of the offer or date of trial as the end point for the back pay award, the award that

they assessed is not supported by credible evidence. Put another way, an apparent inconsistency would exist between the back pay award and the jury's answer to question number 9 of the special verdict whether that answer had been either "yes" or "no." Under the present circumstances, it is logical to assume that the jury followed the court's instructions as to the proper end point for any back pay award but simply erred in their calculation. One of the great advantages of the special verdict is that jury errors can be isolated. Where the error goes only to a single issue, therefore, retrial of only that issue may be necessary. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 498–99, 51 S.Ct. 513, 514–15, 75 L.Ed. 1188 (1931). In this case, the jury's error reasonably can be explained as an isolated computational error. In sum, the court finds no irreconcilable inconsistency between the jury's finding regarding the reinstatement offer and the back pay award so as to require a new trial of both issues.

Furthermore, there is no inconsistency, apparent or otherwise, between the back pay award and the jury's denial of emotional distress and punitive damages. These latter issues were addressed separately from the question of lost back pay in both the court's instructions and on the special verdict form. The jury's denial of emotional distress and punitive damages simply has no bearing on the back pay damage award.

The sole remaining question is whether a new trial must be ordered on the back pay issue or whether remittitur is appropriate in this case. The plaintiff contends that remittitur is not proper because there is no clear evidence concerning the plaintiff's lost past compensation up to the time of the reinstatement offer. Remittitur is not in order when there are genuine issues of fact concerning the amount of damages recoverable. *Murray v. Toyota Motor Distributors, Inc.*, 664 F.2d 1377, 1380 (9th Cir.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2905, 73 L.Ed.2d 1314 (1982). In this case, however, the plaintiff himself testified that when he received the reinstatement offer, his lost back pay, less the consulting fees and pension benefits he had received, was approximately $25,000. His testimony went uncontradicted.

Although the $25,000 figure was characterized as an approximation, mechanical certainty in the computation of back pay awards is not required. *Kaplan v. Int'l Alliance of Theatrical Stage Employees, etc.*, 525 F.2d 1354, 1362–63 (9th Cir.1975). The $25,000 figure is sufficiently certain to justify remittitur in this case. Accordingly, the defendants' motion for a partial new trial will be denied upon the condition that the plaintiff accept a remittitur of the back pay damage award to $25,000. If the plaintiff accepts the remittitur, the liquidated damage award similarly will be reduced to $25,000. *See Rodriguez v. Taylor*, 569 F.2d 1231, 1236 n. 9 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Thus, upon acceptance of the remittitur, the plaintiff will be entitled to judgment for $50,000, plus costs and attorney fees. If the plaintiff does not accept the remittitur, a new trial will be held limited solely to the question of the proper back pay award.

Therefore, IT IS ORDERED that the plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial be and hereby is denied.

IT IS ALSO ORDERED that the defendants' motion for judgment notwithstanding the verdict be and hereby is denied.

IT IS FURTHER ORDERED that the defendants' motion for a partial new trial be and hereby is denied on the condition that the plaintiff accept a remittitur of back pay and liquidated damages in excess of $50,000, plus his costs and attorney fees. If the plaintiff does not accept, serve and file the remittitur within 20 days from the date of this decision and order, a new trial will be scheduled by the court to be limited solely to the issue of back pay damages.

IT IS FURTHER ORDERED that the taxing of costs and attorney fees will be held in abeyance pending either the plain-

tiff's acceptance of the remittitur or the resolution of the partial new trial.